Cushman et al., Appellants, *v.* The Rector, Church Wardens and Vestrymen of the Church of the Good Shepherd, Radnor, et al.

*Trusts—Removal of church—Ecclesiastical law—Equity—Jurisdiction.*

Where a bill for an injunction against removing a church from one location to another and the destruction of the original house of worship alleges that subscriptions were made and received for the erection of the building at the original location and for the purpose of building there a memorial to certain persons, a demurrer to the bill will not be sustained, as the question raised is not a question of church polity or of ecclesiastical power, but one of fair dealing between the church authorities and the contributors, over which a court of equity has jurisdiction.

Argued Feb. 15, 1894. Appeal, No. 231, Jan. T., 1894, by plaintiffs, Chas. W. Cushman et al., from decree of C. P. Delaware Co., June T., 1893, No. 1, in equity, sustaining demurrer to bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Reversed.

Bill in equity for injunction. Before CLAYTON, P. J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were (1) action of court in sustaining demurrer; (2, 3) dismissal of bill, quoting decree.

*William Drayton* and *Joseph B. Townsend*, for appellants.— This being a question of property, not of ecclesiastical rights and doctrines, the court has jurisdiction: Roshi's Ap., 69 Pa. 462; Christ Church v. Church of Holy Communion, 8 W. N.

542; Langolf v. Seiberlitch, 2 Pars. Eq. Cases, 64; Beatty v. Ritchie, 2 Peters, 566.

The proposed action of the vestry would be a violation of the trust reposed in them: Roberts's Trustee v. Moudy et al., 19 Mo. Ap. 26; 2 Story's Eq. Jur. 1175; Venable v. Coffman, 2 W. Va. 310; Adams v. Adams's Academy, 65 N. H. 227; Baker v. Fales, 16 Mass. 488; Atty. Gen. v. Newbury Corp., 1 Cooper, 72; Atty. Gen. v. Goldsmith Co., 1 Cooper, 292; Atty. Gen. v. Brandreth, 1 Y. & Coll. 200; Trustees v. Proctor, 66 Ill. 11; Van Houten v. Church, 2 C. E. Green, 126; Hill on Trustees, 466; Lewin on Trusts, 531; Society of the Cincinnati's Ap., 154 Pa. 621; Wilvercomb's Case, Duke's Char. Uses, 94, 573; Greenhouse's Case, 1 Mad. Ch. R. 92, 108.

*V. Gilpin Robinson, Rowland Evans* with him, for appellees.—It was understood in the court below that the paragraphs constituting a speaking demurrer should be considered as omitted.

The averments of the bill amount merely to this, that plaintiffs, worshipers in the church, disapprove of the manner in which the corporation proposes to deal with its property.

The court had jurisdiction: Batterson v. Thompson, 8 Phila. 251; Baptist Congregation v. Scannel, 3 Grant, 48; Sarver's Ap., 81* Pa. 183.

No one but the grantor can complain of a violation of the grant: Churchman v. Cane, 4 Del. Co. R. 378.

The right of alienation exists: Brendle v. German Ref. Congregation, 33 Pa. 424; Burton's Ap., 57 Pa. 218.

The Price act of 1853 is resorted to only when a disability to convey exists.

OPINION BY MR. JUSTICE WILLIAMS, July 11, 1894:

This decree was made upon a demurrer to the plaintiff's bill. The bill, after setting out the organization of a church society in Radnor, Delaware county, under the name of the Church of the Good Shepherd, its incorporation by the court, and the selection of a site, and the erection of a house of worship thereon, proceeded to allege, as the grounds on which equitable relief was sought, the following facts: First, that the church building was erected as a memorial to Bishops Bowman and Kem-

per; that the church organization sought, obtained and used, subscriptions upon the express understanding that the building should be erected as such memorial; and that it is bound by the receipt and use of the money, if not to preserve, at least not to destroy the building so erected. Second, that the location at Radnor was also a condition upon which money was subscribed; and that the erection of a new house of worship, as proposed, in another township and county, at some distance (the exact distance does not appear) from Radnor, and the tearing down of that at Radnor, would be in bad faith towards those who had given their money, because of the location and their interest in the erection of a house of worship on that site. Third, that a large minority of the congregation and members of the corporation, are better accommodated by the present than they would be by the proposed location, and are desirous, and of sufficient pecuniary ability, to maintain services regularly in the building at Radnor; and that the destruction of the building under such circumstances by the officers of the corporation would be an unnecessary waste, injurious to the plaintiffs and beneficial to no one, which a court of equity should prevent. The demurrer contained several averments of fact on which to some extent the legal positions of the defendants rested. It was a speaking demurrer, and might properly have been overruled, and the defendants required to set up the facts they relied on by answer. But the learned judge of the court below sustained the demurrer, dissolved the preliminary injunction and dismissed the bill. If we reject the averments of fact in the demurrer the allegations of the bill stand admitted, and the only question raised is over their sufficiency.

The general proposition that questions of ecclesiastical polity are for the ecclesiastical courts is well settled, O'Hara v. Stack, 90 Pa. 477; but the bill alleges the existence of facts that give to the subscriptions of money towards the erection of the building a conditional character.

If the facts exist, as the demurrer admits, then the acceptance of the money offered upon such conditions amounted to an implied undertaking to perform them, from which it would be in bad faith for the corporation now to recede. The money so received may be fairly said to have been received upon the trust and confidence that it would be used in good faith for the purposes for which it was given.

It seems to have been so used, and a building was erected on the site chosen, and made a memorial to the bishops in honor of whose lives the money was contributed. Now, it is decided by the ecclesiastical organization, and the corporation, known as the Church of the Good Shepherd, that the home of the society shall be transferred from Radnor to Merion; that a new building shall be erected as a memorial to a worthy lady; and that the old building shall be torn down and the materials transported to Merion for use in the erection of a Sunday school building at that place.

We see no reason disclosed by the bill for doubting the power of the corporation to change the place at which its services shall be conducted. It may be that, upon a proper application to the courts, leave to sell the Radnor property might be given, and the trust imposed upon the fund, if any, might be provided for elsewhere; but if, as the demurrer admits, subscriptions were secured towards the erection of the house at Radnor for the purpose of building at that place a memorial to Bishops Bowman and Kemper, or for any other distinct purpose apart from the mere erection of a place of worship, and with the money so obtained the memorial was built, the question whether the corporation may raze it to the ground, transport the material taken from it to some other place, and use it in the erection of a building for a wholly different purpose is not a question of church polity or of ecclesiastical power. It is a question of fair dealing between the church authorities and those who furnished them the money with which to build, over which a court of equity has jurisdiction. Gass's Appeal, 73 Pa. 39; Schlichter v. Keiter, 156 Pa. 119.

This is all there is in this case. We have certain allegations of fact in the bill. The demurrer raises only the question of their legal effect. Their legal effect is to raise a question, not of ecclesiastical power but of civil right. For this reason the decree of the court below is reversed, the demurrer is overruled, the preliminary injunction reinstated, and the record remitted with direction that the defendants be required to answer.

The costs of this appeal to be paid by the appellee.