Charles W. Cushman, Charles F. Shoener, William Cotter, George Phy, Theodore L. Harrison, John W. Mertz and John Roberts, Appellants, *v.* The Rector, Church Wardens and Vestrymen of the Church of the Good Shepherd, Radnor, and A. B. Conger, Rector of said Church, H. Laussat Geyelin, Charles S. W. Packard, Harry B. French, William Gray, A. Van Harlingen, M. D., Frank Harman, Spencer Ervin, Harry Sargent, John H. Beadle, Vestrymen of said Church.

*Corporations—Churches—Church law—Control of property by lay members—Act of April 26, 1855, sec. 7.*

Under the Act of April 26, 1855, P. L. 328, sec. 7, relating to the control of church property by lay members, the vestry of a Protestant Episcopal Church, representing as it does the laity, may dispose of church property under ecclesiastical rules in the interests of the church, unless it attempts to violate a condition subject to which the property was granted, or money to purchase and build it was contributed.

*Church law—Conditional gift to church—Removal of church building.*

Where money is contributed to a church corporation upon condition that it shall be expended in the construction of a building as a memorial to certain persons designated, the law will assume that both corporation and contributors made the condition, subject to the law of the church, that if the congregation became depleted in numbers and substance by reason of death and removals, or shifting of population, the particular church building might be disposed of, and all the associations connected with it should, as nearly as possible, be transferred to a successor, wisely located in a new field.

A church was erected merely as a place of worship, by subscriptions, contemplating that it should be a memorial to two deceased bishops, and two memorial windows were built in the church in pursuance thereof. *Held,* that equity will not enjoin the destruction of the church by the vestrymen, where it is shown that it is their intention to remove the windows, and place them in a new church to be built at another place.

*Constitutional law—Church law—Decoration of house of worship.*

It is one of the natural and indefeasible rights guaranteed by the constitution that every one shall have the right to worship according to the dictates of his own conscience. If the pious persons of a particular denomination choose, as an incident of their house of worship, to so construct or decorate it as to continually call to mind deceased persons noted for piety or devotion, it in no way transgresses their franchises, and the courts will not interfere with such action.

Argued Feb. 8, 1898.   Appeal, No. 302, Jan. T., 1897, by plaintiffs, from decree of C. P. Delaware Co., June T., 1893, No. 1, on bill in equity.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity for an injunction.

The plaintiffs, who were members of the corporation defendant, averred in their bill that the church building was erected with funds obtained by subscription; first, to build and maintain a church in Radnor township, Delaware county; second, to erect a memorial structure to the memory of Bishops Bowman and Kemper; that a member of the vestry had offered $25,000 if they would erect a new church in Rosemont, Montgomery county, and make it a memorial to his deceased wife; that the vestry had accepted this offer, and were preparing to tear down the present church structure and sell the grounds, remove the church to Rosemont, and make it a memorial to Mrs. French.

The bill prayed for an injunction, preliminary until hearing and perpetual thereafter, to restrain the defendants from demolishing the church structure erected in Delaware county, and dedicated as a memorial to Bishops Bowman and Kemper.

A preliminary injunction was granted on March 10, 1893, which was, on motion, dissolved on March 20.   A rule to plead, etc., was then taken, and a demurrer was filed, which was sustained by the court below.   An appeal was taken to this court, December 26, 1893, and after argument the decree of the court of common pleas was reversed, an opinion being delivered by Mr. Justice WILLIAMS, July 11, 1894.   The case is reported in 162 Pa. 280.

The remittitur being filed, the defendants put in their answer, and Lewis L. Smith, Esq., was, by consent of both sides, appointed referee.   Testimony was taken, and on October 28, 1896, the report of the referee was filed, sustaining the bill and suggesting a form of decree.   On March 8, 1897, the defendants' exceptions were sustained by the court below, CLAYTON, P. J., delivering the following opinion:

The Church of the Good Shepherd is a religious corporation, chartered under the act of 1791, which required, first, that the

articles of association should be presented to the attorney general, and, after his approval, to the Supreme Court, and, if approved by the Supreme Court, then to the governor, and by his directions the charter should be enrolled at Harrisburg, after which it should take full effect. Such charters authorize the corporation to take, receive, hold and dispense with all kinds of personal and real property, and to employ the same according to its will or the will of the donors. The act of 1855 required all such charters to contain a clause that the property shall not be otherwise taken and held or inure than subject to the control and disposition of the lay members of such church, or such constituted officers or representatives thereof as shall be composed of a majority of lay members, citizens of Pennsylvania. The vestry of all Protestant Episcopal churches represent the laity. Accordingly, this charter was granted subject to the condition: "That all the property of the said corporation shall be taken, held, and enure subject to the control and disposition of the vestry of the same."

Here, then, we have a church incorporation, vested with full power to hold and dispose of all its property, subject to but this one condition. It is incorporated as an Episcopal church. The ecclesiastical authorities attend to the spiritual necessities of the church, who are represented by the rector. The church wardens and vestry represent the laity. The principal object is the worship of God according to the doctrines and canons of the Protestant Episcopal church of America. It has no authority to erect or perpetuate memorials or monuments, or to apply its property for any such purposes, if that is the primary object. It has no power to divert its revenues or to expend its property for any other purpose than the worship of God, as a church, and to maintain the building as a place of worship. Monuments and memorials are intended to perpetuate the memory of great and good men. That was not the object of the incorporation of this church. In this case the incorporation expresses its object in its name; it is chartered as the Church of the Good Shepherd. The complainants contend that it should have been chartered as a memorial or monument to two of the good shepherds, faithful leaders. If it was intended as a memorial to these two deceased bishops, its name conveys no such idea. There can be no objection to the erection of such

memorials, but, when erected by a corporation, the charter, if that is the sole object, should contain the power. It clearly was not the object of this society, as expressed by its articles of association and its charter, to be merely a monument or memorial to these two deceased bishops. Unless, therefore, this corporation has done sòme official act, authorized by its charter, that will render it a trustee ex maleficio, or, by some authorized instrument in writing, it has made itself in law a trustee for the perpetual preservation of this church as a memorial to these two deceased bishops; it has, by its charter, full and complete dominion over all its property, so far as the objects of the corporation are concerned. The appropriation of its property for the erection and perpetuation of monuments to men would be ultra vires. Such erections may be permitted as mere sentimental religious expressions, but they cannot be enforced, unless, as before stated, the church has done some act which would render it a trustee either in fact or in law. It must have done some act in violation of some other person's civil right to give the court jurisdiction. The referee holds that the resolution of the vestry of 1870, before the church was incorporated, and the resolution of 1871, after the date of the charter, are in the nature of a written declaration of a trust, and, as subscriptions were made upon the faith of these resolutions, it would be bad faith in the corporation to now remove the memorial. True, the resolution of 1870, made about the time the church was moving for its incorporation, expresses a desire that the Church of the Good Shepherd be erected as a memorial to the late Bishop Kemper, Wisconsin, and that the committee on charter be directed to have the charter altered to that effect. This resolution was either rejected by the committee, by the attorney general, or by the Supreme Court, for we find that the charter was not altered, but nine months after the date of this resolution its charter was granted in its present form. We are, therefore, at a loss to comprehend upon what the referee bases his conclusion that this resolution was a written declaration of trust. It is true that after the date of the charter, July 7, 1871, another resolution was adopted, declaring that the Church of the Good Shepherd be erected as a memorial to two deceased bishops (the first resolution only named one); but no amendment was made to the charter, nor is it

proved that any subscriptions were made upon the direct faith of this resolution. It is admitted that the vestry has acted throughout in strict conformity with the canons of the church, and has the assent and approval of the ecclesiastical authorities; it also seems that there is now no rector or church services held in the building proposed to be 'sold, and cannot be without favorable action by the ecclesiastical authorities of the church. While, therefore, the complainants charge that they are able and willing to maintain church worship at that place, it is beyond their power to do so without the consent of the ecclesiastical powers of the church. The referee has no other instrument or fact than the resolution aforesaid to base his conclusion upon that there was an actual trust to apply the property of the church or corporation to the maintenance of these monuments. The parol evidence upon the subject is of the most vague and unsatisfactory character. It appears, from the report of the referee, that at least one half of the subscriptions were made without condition. The evidence shows and the referee finds that the heading of the subscription list made no such reference; they were in the usual form for subscriptions for a church. Even Mrs. Cushman does not say that she gave her $500 on the representation of the corporation that this church was to be a memorial, etc. She says that she gave her subscription of $500 after the church had been built, knowing and believing that it was a memorial church, and that she obtained from her father a subscription of $500 after telling him that it was to be a memorial church. There is not a word here tending to show that the corporation authorized her to make such a representation to her father, or that she or he gave upon the faith of any such authorized representation by her. James C. Haydon says he contributed $200 in lumber, and was largely induced to do so because of the church being a memorial. The referee finds as a fact: "The vestry undoubtedly had in mind the construction of a Protestant Episcopal church as a place of worship merely." He says: "How far the memorial character of the church entered as a factor in such contract of subscription it would have been extremely difficult to determine in 1871; it is practically impossible now." All the windows of the church except two are memorial windows. The two largest ones were undoubtedly memorials to the two deceased bishops,

and it is highly probable that these windows were the only memorials ever contemplated by the corporation when the church was constructed, or by the contributors when they made their subscription.

One of the complaints in the bill was that waste was about being committed by the removal of these windows. The referee finds as a fact that this charge is not sustained. The referee finds the value of the old church property to be from fifteen to twenty thousand dollars. So far as we are able to see, the above are about all the essential facts in the case, and from them the referee concludes that this church was intended to be a memorial to these two deceased bishops, and that it would be bad faith to permit its demolition. To come to such a conclusion, the referee must either find a trust ex maleficio, and that the corporation are such trustees, or he must find a written declaration of trust. He seems to have construed the resolution of July 7, 1871, into such a declaration. The church charter and deeds raise no such trust, and if the charter and deed are to be reformed it will hardly be held that the testimony in the case is sufficiently clear and explicit. It will be admitted without the citation of authorities that the evidence to create a trust ex maleficio must be as explicit as the evidence necessary to reform a deed; in other words, "clear, explicit, and unequivocal." Trusts other than those that result from operations of law, since the act of 1856, must be in writing. The resolution of July cannot, without being reformed by parol testimony, be construed into a written declaration of trust, and the evidence of the reformation of the instrument is clearly insufficient. The resolution does not say a word about the subscriptions, or how they are to be applied, and was not seen, used, or exhibited to any of the subscribers as an inducement for subscriptions. Upon the question of the sufficiency of the evidence see Huffnagle v. Blackburn, 137 Pa. 633; Kraft v. Smith, 117 Pa. 183; Barry v. Hill, 166 Pa. 344, and the cases therein cited.

The referee seems to rely largely upon a sermon preached twenty-six years ago, in which, it is said, the preacher spoke of the church as a memorial. The oral testimony refers to conversations made twenty-five or six years ago, and relies upon such conversation to reform this resolution and convert it into a

declaration of trust. The probability is that the preacher did refer to the two memorial windows, and might have spoken of the church as the memorial, having reference alone to the memorial windows that it contained. It is also quite probable that all the subscriptions that were intended as memorials related wholly to these two windows. Every one familiar with the efforts to raise funds for a religious purpose knows how solicitous the collectors are to touch the charitable sentiments of the persons solicited for the subscriptions. Memorial windows are proposed to dead relatives and friends, and they are sold at fixed prices, scaled according to the size of the windows and their place in the church. Some will give a memorial altar; others a font in which the name of the giver appears in letters of gold. They all have their reward by being permitted to look upon their contributions whenever they visit the church, but no such contributors ever supposed that they have the right to insist upon their memorials being preserved forever and to prohibit the church from selling the property, if the effect would be to destroy their gift. The referee finds that because the vestry adopted the resolution above recited it thereby gave authority to all the collectors for contributions to hold out as an inducement that the church was to be a memorial, and that he presumed that such inducements were made, and now finds that it would be bad faith upon the part of the corporation to sell the church, notwithstanding the day of its usefullness as a church may have forever passed away. I can find no sufficient evidence that this resolution was ever in any manner referred to in making contributions, and if it had been it would not have the effect of creating the trust contended for. It may be that a court of equity, under proper circumstances, would restrain the destruction of these memorial windows, but, as I understand the testimony, this is not proposed, and it is proposed to remove them and set them up in the new church. I gather this from the fact reported by the referee that there is no evidence of an intended devastavit.

Again, there is much force in the argument that if the trust contended for existed it was fully executed as soon as the church was erected, and as the statute of 1853, known as the Price Act, was then in full force, the lawful right of the corporation to sell its property whenever its best interest required

it, free and released from all trust, must be read into the charter and construed as part of the contract of the parties. It must be read into the charter as completely as if it was set forth in hæc verba.

We fear the referee has given a meaning to the opinion of the Supreme Court, when this case was before it on a demurrer to the bill, not intended. The ruling of this court was undoubtedly erroneous. We lost sight of the fact that every allegation in the bill, upon a hearing on a demurrer, must be taken as absolutely proved. The Supreme Court were of opinion that if the facts set out in the bill should be sufficiently proved the action of the vestry in attempting to sell the church and destroy the memorials would be illegal. In the same opinion the Court says there is no doubt of the power of this corporation to sell the church, free from all trust, by proper proceedings, evidently referring to a proceeding under the Price Act. The referee admits that there is much in the case to indicate that the administration of the work of the church would be facilitated if he could arrive at a different determination. If the several allegations of the bill had been sufficiently proved, the plaintiffs would be entitled to the relief prayed for; but, in our opinion, the evidence is too vague and uncertain to sustain any of the material allegations in the bill. The authorities cited by the referee are mostly from England and in other states where no statute exists by which sentimental trusts can be lifted from real estate. In our state there is no difficulty in divesting all such trusts when the best interest of the property owners shall require it.

We are of opinion that under the circumstances of the case, giving due consideration to the conditions contained in some of the deeds of this property, and for the protection of all concerned, the proper course for this corporation would be to file a petition under the act of assembly of April 18, 1853, known as the Price Act, for a sale of the property free from all trusts, with ample security for the protection of all parties interested therein. The decree recommended by the referee is, therefore, modified so as only to restrain the sale of the church property until such a petition shall be duly presented, security entered, and decree made according to the provisions of the said act; and the said corporation have leave to file such petition

and to use the testimony and proceedings in this case as ancillary to said petition. If, upon hearing the evidence upon such petition, should any additional evidence be required, the court shall be of opinion that the best interest of the corporation requires the sale of the property, we will so decree. The decree in that case can, if necessary, be molded so as to secure the rights of the plaintiffs in this bill, if they have any. Or, it may be that we will permit them, upon the ecclesiastical authorities of the church consenting to give them a rector and recognize them as a church, the privilege of buying this property at private sale, at the price fixed by the referee. Under all the circumstances, we are of opinion that the costs of the proceeding should be paid by the corporation, for the reason that the evidence which has been taken may be used upon their petition for a sale.

And now, March 8, 1897, the above cause coming on to be further heard upon exceptions to the report of Lewis Lawrence Smith, Esq., referee, it is, after due consideration, ordered and decreed that the exceptions filed by the defendants be sustained to the extent that the report of the referee is modified by the opinion of the court this day filed. It is further ordered and decreed that the defendant corporation and the members of the vestry and its agents be restrained from selling and conveying the lot of ground, containing about one acre, and conveyed to it by Louisa H. Lyons, together with the improvements thereon erected, until a petition shall be duly presented to this court, under the act of assembly of April 18, 1853, known as the Price Act, for a sale of the said property, free from all trusts, security entered, and decree made according to the provisions of said act, or until the further order of this court. It is further ordered and decreed that the said corporation has leave to file such petition and to use the testimony and proceedings in this case as ancillary to said petition. And it is further ordered and decreed that the costs of this suit shall be paid by the defendants.

*Error assigned* among others was the decree of the court.

*William Drayton*, with him *E. H. Hall*, for appellant.—While the report of a referee is like the verdict of a jury, the fact that

the judge has taken a different view of the force of the testimony makes it necessary to examine that testimony, but, as the only reference which the court makes is to the facts found by the referee, it would seem to be a fair method to rest the conclusions on the internal evidence of that report: Morgan's App., 125 Pa. 561; Morgan's App., 25 W. N. C. 532.

Taking up the first position assumed by the court below, it is submitted that a corporation without express authority in its charter may be a trustee for objects germane to its objects: Mayor v. Elliott, 3 Rawle, 170; Philadelphia v. Fox, 64 Pa. 169.

The second position, that the memorial resolutions do not constitute a declaration of trust, is apparently not in line with the authorities: Attorney-General v. Claphan, 4 De G., H. & G. 626; Lewin on Trusts, * 533.

The evidence was sufficient to show the memorial character of the building: Chase v. Perle, 148 Mass. 289; Barrell v. Joy, 16 Mass. 221; Forster v. Hale, 3 Ves. Jr. 696; Ashpitel v. Sercombe, 5 Exch. 147.

The books signed by the vestry, and also by the subscribers to the fund, are as clear a declaration of trust as can be conceived, and while it is clear the statute of frauds does not enter into this case, as the subscriptions were obtained to build and the money used for the purpose, yet the above would satisfy the requirements of the statute: 1 Purdon's Dig. 942, sec. 3; Carpenter v. Davis, 72 Ill. 14; Dawkins v. Penrhyn, L. R. 4 App. Cases, 51; Jenkins v. Eldredge, 3 Story, 290.

The law on the subject of removing the church from the township and county for which subscriptions were obtained to a different one is well settled: People v. Oakland Co. Bank, 1 Doug. (Mich.) 282; Underwood v. Waldron, 12 Mich. 73; Adams v. Adams Female Academy, 65 N. H. 225; McRoberts v. Moudy, 19 Mo. App. 26; 2 Story's Eq. Jur. § 1175; Venable v. Coffman, 2 W. Va. 310; Attorney-General v. Newbury Corp., 1 Cooper Chan. Rep. 72; Attorney-General v. Brandreth, 1 Y. & C. Chan. 200.

*V. Gilpin Robinson*, with him *John G. Johnson*, for appellee. —Naturally the terms of an implied trust are such as are reasonably deducible from the relations of the parties at the time

the trust was created. In the case in hand this would be, first, that the gifts should be actually applied to the purpose for which they were given; second, that the donee should act in good faith toward the donor.

The cases bearing the closest analogy to this case are such as pass upon the rights of pew-holders in churches and of the rights of sepulture in church grounds, and the principles of equity therein declared are such as are applicable here, and declared by this Court in Cushman v. Church, 162 Pa. 282, that equitable relief can. only be invoked where the complainants show first a clearly established right, next " bad faith " toward those who have the right to complain: Church v. Wells, 24 Pa. 249; Kincaid's App., 66 Pa. 411; Craig v. First Presbyterian Church, 88 Pa. 42.

Plaintiffs had no standing: Craig v. First Presbyterian Church, 88 Pa. 49. .

OPINION BY MR. JUSTICE DEAN, November 14, 1898:

This case was here before, see 162 Pa. 280. In that case, a demurrer to the bill had been sustained in the court below, and the bill dismissed. We held, speaking by our Brother WILLIAMS: "We see no reason disclosed by the bill for doubting the power of the corporation to change the place at which its services shall be conducted. It may be that, upon a proper application to the courts, leave to sell the Radnor property might be given, and the trust imposed upon the fund, if any, might be provided for elsewhere; but if, as the demurrer admits, subscriptions were secured towards the erection of the house at Radnor for the purpose of building at that place a memorial to Bishops Bowman and Kemper, or for any other distinct purpose apart from the mere erection of a place of worship, and if with the money so obtained the memorial was built, the question whether the corporation may raze it to the ground, transport the material taken from it to some other place, and use it in the erection of a building for a wholly different purpose is not a question of church polity or ecclesiastical power. It is a question of fair dealing between the church authorities and those who furnished them the money with which to build, over which a court of equity has jurisdiction." Therefore, the decree dismissing the bill was reversed, the demurrer overruled,

the bill reinstated and defendants directed to answer to the averments of fact. On the record being remitted to the court below, defendants filed answer, denying all the material averments of fact. By agreement, the issue was sent to Lewis Lawrence Smith, Esq., as referee, whose findings of fact and conclusions of law, in the main, sustain the plaintiffs' contention. On exceptions being filed and heard in the court below the findings of the referee were overruled. We have, then, the conflict between the referee and the court to settle by our decree.

The act of 1855 requires that all charters, such as that held by this church, shall contain a clause subjecting all the church property to the control of the lay members of the corporation or church, through constituted officers, a majority of whom shall be citizens of Pennsylvania. The vestry of Protestant Episcopal churches or congregations represent the laity, and this act must be read into this charter. It follows that the vestry can dispose of this property under ecclesiastical rules, in the interests of the church, unless they attempt to violate a condition subject to which the property was granted or money to purchase and build it was contributed.

The court below finds from the evidence that the church was erected as a place of worship merely; that while the two largest windows in it were memorials to the two deceased bishops, yet that it is highly probable these windows were the only memorials contemplated by the corporation when the church was erected and the contributors made their subscriptions. The learned judge of the court below further finds that there is no intention on the part of the corporation to destroy these windows, but that it is the intention to remove them, and place them in the new church. We cannot discover in the testimony, any evidence of unfair dealing by the majority with the minority. Undoubtedly, quite a number of persons subscribed and paid their money towards the erection of the old church, because it was represented to them that it was to be a memorial church to the one or other or both of the deceased bishops; and in pursuance of this promise the two memorial windows were placed in the church. Palpably, the condition was then fulfilled, because no complaint is heard that it had been broken, in all the years following. But what is the reasonable interpretation of

VOL. CLXXXVIII—29

such a condition? Certainly, not that the corporation will, through all the mutations of time, perpetually maintain the church at that particular spot, with those particular windows. We must assume that both corporation and contributors made the condition, subject to the law of the church, that if the congregation became depleted in numbers and substance by reason of death and removals, or shifting of population, this particular church might be disposed of, and all the associations connected with it should, as nearly as possible, be transferred to a successor, wisely located in a new field. That it was to forever remain in that place, even though not a single worshiper entered its doors, is an unreasonable interpretation.

After a careful examination of the testimony, the findings and conclusions of the referee and the court, we are of opinion that the decree sustaining the exceptions was fully warranted. There certainly is no evidence to sustain the charge of unfair dealing on the part of the corporation with those who paid their money to construct the old building. While this is our opinion, we do not concur in the remarks of the learned judge on the subject of memorials to perpetuate the names of those deceased members of the congregation whose lives and works have rendered them objects of affection and veneration. It in no degree antagonizes the primary objects of a church to have connected with it, in whatever way suits the taste or wish of the members, the names of such persons; in fact, it is the conviction of many Christians that they are aids to religious sentiment, and such has been the belief of multitudes in all ages, especially in the Roman Catholic and Episcopal churches. It is one of the natural and indefeasible rights guaranteed by our constitution that every one shall have the right to worship according to the dictates of his own conscience. If the pious persons of this denomination choose, as an incident of their house of worship, to so construct or decorate it as to continually call to mind deceased persons noted for piety or devotion, it in no way transgresses their franchise, and is none of our business either as courts or individuals.

Being of opinion, on the whole case, that the decree of the court below was right, it is affirmed, and the appeal is dismissed at costs of appellants.